UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
DARRELL GUNN,

                                    Plaintiff,

   - against -

C.O. ADAM AQUAFREDDA; FREDERICK N.
BERNSTEIN, M.D., F.H.S.D.; VISHWAS
BHOPALE, M.D.; E. BURNETT, Deputy
Superintendent for Security; ROBERT J.
COCUZZA, Sergeant; #1 JOHN DOE, ELMIRA
C.E.R.T. C.O.; #2 JOHN DOE, ELMIRA C.E.R.T.
C.O.; #3 JOHN DOE, ELMIRA C.E.R.T. C.O.; #4
JOHN DOE, ELMIRA C.E.R.T. C.O.; #5 JOHN
DOE, ELMIRA C.E.R.T. C.O.; #6 JOHN DOE,
ELMIRA C.E.R.T. Sergeant; DRAGOON,
Sergeant; CARL J. KOENIGSMANN, M.D.,
Deputy Commissioner; PAULINE LONG-KUTOY,
Registered Nurse; C.O. ANTHONY STUETZLE,

                                    Defendants.
-------------------------------------------------------------x

**OPINION & ORDER**

No. 19-CV-10039 (CS)

Appearances:

Darrell Gunn
Ossining, New York
*Pro Se Plaintiff*

Jennifer Gashi
Assistant Attorney General
White Plains, New York
*Counsel for Defendants*

Seibel, J.

      Before the Court is the motion to dismiss of Defendants Drs. Frederick Bernstein and

Vishwas Bhopale, Green Haven Correctional Facility Deputy Superintendent E. Burnett,

Sergeant Robert J. Cocuzza, Sergeant Dragoon, Registered Nurse ("RN") Pauline Long-Kutoy,

Deputy Commissioner of the New York State Department of Corrections and Community

Supervision ("DOCCS") Carl J. Koenigsmann. M.D., and Correction Officers ("COs") Anthony Stuetzle and Adam Aquafredda (collectively, "Defendants"). (Doc. 32.) For the following reasons, Defendants' motion is GRANTED.

I. **BACKGROUND**

I accept as true the facts, but not the conclusions, set forth in Plaintiff's Second Amended Complaint, (Doc. 25 ("SAC")), Amended Complaint, (Doc. 11 ("AC")), original Complaint, (Doc. 2 ("OC")), Affirmation for Timeliness, (Doc. 7 ("Aff.")), response to Defendants' pre-motion letter, (Doc. 29), and opposition to Defendants' motion, (Doc. 35 ("P's Opp.")). *See Washington v. Westchester Cnty. Dep't of Corr.*, No. 13-CV-5322, 2015 WL 408941, at *1 n.1 (S.D.N.Y. Jan. 30, 2015) (court may consider facts from *pro se* plaintiff's original complaint even if they have not been repeated in amended complaint); *Braxton v. Nichols*, No. 08-CV-8568, 2010 WL 1010001, at *1 (S.D.N.Y. Mar. 18, 2010) ("[A]llegations made in a *pro se* plaintiff's memorandum of law, where they are consistent with those in the complaint, may also be considered on a motion to dismiss.").[1]

A. **Facts**

*Pro se* Plaintiff Darrell Gunn is an inmate at Sing Sing Correctional Facility who was previously incarcerated at Green Haven Correctional Facility ("Green Haven"). On September 16, 2014, while Green Haven was on lockdown, Defendants C.O. Aquafredda and C.O. Stuetzle ordered Plaintiff to accompany Stuetzle to the Body Orifice Scanning System ("BOSS") chair as Aquafredda searched Plaintiff's cell. (SAC ¶¶ 1-2; AC ¶ 5; OC ¶¶ 29-30.) Corrections Emergency Response Team ("C.E.R.T.") officers from Elmira Correctional Facility ("Elmira")

---

[1] The Court will send to Plaintiff copies of all unpublished decisions cited in this Opinion and Order.

were at Green Haven to assist in conducting cell searches during the lockdown. (SAC ¶ 4; AC ¶ 7.) While Stuetzle escorted Plaintiff back to his cell, the Elmira C.E.R.T. officers recognized Plaintiff.² (SAC ¶ 5; AC ¶ 8.) Plaintiff alleges that the Elmira C.E.R.T. officers stopped Stuetzle and said the following: "[T]here's GUNN – he's here now! He's a piece of shit! Get him! He got Schieber suspended! 'GUNN,' you're a piece of shit! Get him! I wish I was searching his cell! Get him! 'GUNN' is accusing everyone of grabbing his ass." (SAC ¶ 6; AC ¶ 9; OC ¶ 34.) Stuetzle replied, "We will take care of it." (SAC ¶ 7; AC ¶ 10.)

Plaintiff then observed Aquafredda searching Plaintiff's cell and reading through Plaintiff's legal papers. (SAC ¶ 9.) Plaintiff states that Aquafredda asked Plaintiff about an officer named in Plaintiff's legal papers, to which Plaintiff responded, "You'd read my legal papers. He sexually assaulted me." (*Id*. ¶¶ 14-15; AC ¶ 18; OC ¶¶ 42-43.) Aquafredda then "viciously punched" Plaintiff in the back and in the back of the head while Plaintiff was standing and facing the wall with both of his hands up against the wall. (SAC ¶¶ 16-18.) Aquafredda exited Plaintiff's cell, slammed the door, and yelled, "You're a snitch." (SAC ¶ 20.) Plaintiff explains that he "was in fear for his life" following the incident. (SAC ¶ 22; AC ¶ 25; OC ¶ 50.)

A day later, on September 17, 2014, Plaintiff asked for sick call but was informed there was "no sick[]call available." (SAC ¶ 22; AC ¶ 25; OC ¶ 50.) When Plaintiff went to sick call on September 18, he was in pain, was unable to move, and had difficulty breathing. (AC ¶ 26; OC ¶ 51.) Medical staff discovered a bruise on Plaintiff's back. (SAC ¶ 23; AC ¶ 26; OC ¶ 51.) Plaintiff allegedly sustained several injuries from the assault, including a concussion, broken

---

² The SAC suggests that Plaintiff was formerly incarcerated in Elmira and that the Elmira officers recognized him because Plaintiff had filed grievances against correction officers there. (*See* SAC ¶¶ 5-6.)

3

neck, shoulder injury, and back injury, (P's Opp. at 12), as well as "contussion [*sic*], [and] loss of hearing," (AC ¶ 27).

Plaintiff alleges that Defendant Sergeant Dragoon dismissed Plaintiff's requests to speak to a doctor. (SAC ¶ 29; AC ¶ 32; OC ¶¶ 58-59.) Plaintiff "continued to complain of the pain and suffering" to Defendant RN Long-Kutoy, but she responded, "There is no doctor on duty." (SAC ¶ 44; OC ¶ 74.) Dragoon, Long-Kutoy, and Defendant Sergeant Cocuzza made remarks to Plaintiff to the effect that he would face retribution, including confinement in the Special Housing Unit, when he tried to report the assault in an ambulatory health report. (SAC ¶¶ 32, 39, 42, 49; AC ¶ 35, 40, 42; OC ¶¶ 61, 67-68.)

Defendant Dr. Bernstein eventually examined Plaintiff and ordered that he be taken to an outside hospital for further treatment. (SAC ¶ 47; AC ¶ 51; OC ¶ 77.) Plaintiff asserts that Defendant Dr. Bhopale failed to provide him with additional treatment on three separate occasions in January 2015. (SAC ¶¶ 53-55.) Plaintiff alleges that Bernstein and Bhopale were deliberately indifferent to Plaintiff's medical needs and "misdiagnose[d]" him by "misconstru[ing]" two dates. (*Id.* ¶ 56; *see* OC ¶ 86.) Plaintiff was also denied sick call "for unknown reasons" on January 26, 2015, February 2, 2015, February 16, 2015, February 17, 2015, and March 16, 2015. (SAC ¶ 57; AC ¶ 61; OC ¶ 87.)

Plaintiff also claims that Defendants Burnett and Koenigsmann failed to supervise their subordinates and allowed "unconstitutional practices" to occur. (SAC ¶ 62; *see id.* ¶ 72.) Plaintiff states that Burnett was "well aware" of surveys published by the Correctional Association of New York Prison Visiting Project that in 2006 described high rates of reported retaliation against prisoners who filed grievances at Green Haven, (*id.* ¶ 61), and in 2010 described high rates of reported sexual abuse at Elmira, (*id.* ¶ 64; *see* AC ¶ 70). Plaintiff asserts

4

that, based on the existence of these reports, Burnett knew that his subordinates would act unlawfully and "failed to stop them from doing so." (OC ¶ 109.)  Plaintiff further asserts that on or about July 23, 2014, Burnett ordered that Plaintiff provide a written statement regarding the "Elmira sexual assaults and threats," (SAC ¶ 60), yet failed to protect Plaintiff from "substantial risk [of] serious harm," (*id.* ¶ 59).  As for Koenigsmann, Plaintiff states that despite being "informed of the violation" through the 2006 New York Prison Visiting Project report described above, which raised issues regarding medical care, he "failed to remedy the wrong that the medical provider was unresponsive to plaintiff[']s] medical needs for two days" after the incident. (*Id.* ¶ 72.)

Plaintiff alleges, and Defendants do not dispute, that on March 24, 2015, Plaintiff filed a grievance with Green Haven regarding the claims outlined in his complaints. (*See id.* at 21, 37, 49, 55; AC at 14, 28, 39, 44).[3]  As a result of the injuries Plaintiff sustained from the September 16, 2014 assault, Plaintiff was in physical therapy for more than three years for his shoulder, neck, and back. (P's Opp. at 7-8.)  Between October 2014 and October 2016, Plaintiff had twenty medical appointments related to those injuries. (*Id*. at 8-10).  On May 5, 2015,[4] Plaintiff underwent major arthroscopy and acromioplasty distal surgery for his left shoulder injury at Mount Vernon Hospital. (*Id.* at 8; Aff. at 4.)

---

[3] The paragraphs describing Plaintiff's grievance in the SAC and AC are unnumbered, so these citations refer to the page number.

[4] On page 3 of his opposition to Defendants' motion, Plaintiff states that the surgery occurred on May 5, 2017, but on page 8 he says it was on May 5, 2015. (P's Opp. at 8.)  The context makes clear that the latter allegation is correct, and the May 5, 2015 date is also set forth in Plaintiff's Affirmation for Timeliness. (*See* Aff. at 4.)  Citations to page numbers in the Affirmation for Timeliness refer to the page numbers generated by the Court's Electronic Filing System.

B.     **Procedural History**

On October 25, 2019, Plaintiff filed suit against DOCCS Acting Commissioner Anthony Annucci, Dr. Bernstein, Dr. Bhopale, Burnett, Cocuzza, Dragoon, Green Haven Superintendent Thomas R. Griffin, Koenigsmann, Long-Kutoy, Green Haven Superintendent William Lee, Green Haven Deputy Superintendent Lynn Lilley, Captain Thomas Melville, two John Doe Green Haven C.E.R.T. officers, and six John Doe Elmira C.E.R.T. officers, bringing claims for damages and injunctive relief under 42 U.S.C. § 1983 for various federal constitutional violations.  (OC at 1-2.)

On January 27, 2020, then-Chief Judge Colleen McMahon issued an order to show cause why the case should not be dismissed as barred by the statute of limitations.  (Doc. 6.)  Plaintiff submitted his "Affirmation for Timeliness," (Aff.), on February 26, 2020.

On April 16, 2020, this Court dismissed with leave to replead Plaintiff's claims against Annucci, Burnett, Griffin, Koenigsmann, Lee, Lilley, and Melville.  (Doc. 9.)  On May 28, 2020, Plaintiff filed an amended complaint against Burnett and Koenigsmann (in addition to Bernstein, Bhopale, Long-Kutoy, Cocuzza, Dragoon, and the Doe officers).  (Doc. 11.)  On October 27, 2020, Plaintiff filed a Second Amended Complaint against the same Defendants and naming the John Doe Green Haven C.E.R.T. officers as C.O. Aquafredda and C.O. Stuetzle.  (Doc. 25.)

On November 13, 2020, Defendants filed a letter requesting a pre-motion conference regarding their intended motion to dismiss the SAC, (Doc. 26), and Plaintiff responded, (Doc. 29.)  At the pre-motion conference on December 11, 2020, the Court advised Plaintiff that in his opposition papers he should provide a better explanation than he had in his letter as to why his case should not be dismissed on statute of limitations grounds.  (Minute Entry dated Dec. 11, 2020.)

Defendants moved to dismiss on January 20, 2021, (Doc. 32; *see* Doc. 31), arguing that Plaintiff's complaint is time-barred, that Plaintiff failed to state a viable claim of deliberate indifference to his medical needs against Defendants Bernstein, Bhopale, and Long-Kutoy, and that he failed to establish the personal involvement of Defendants Burnett and Koenigsmann in any constitutional violations, (Doc. 33 ("Ds' Mem")). Plaintiff timely submitted his opposition on February 25, (P's Opp.), and Defendants submitted their reply memorandum on March 17, (Doc. 36).

## II. LEGAL STANDARD

### A. Motion to Dismiss for Failure to State a Claim

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up). While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not

entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)) (cleaned up). "[A] complaint does not allege sufficient facts to suggest that its claim to relief is plausible," and, thus, "a motion to dismiss may be granted, where the underlying claim is time barred by a statute of limitations." *Figueroa v. City of N.Y.*, No. 07-CV-11333, 2008 WL 4185848, at *1 (S.D.N.Y. Sept. 4, 2008), *reconsideration denied*, 2009 WL 10738225 (S.D.N.Y. May 21, 2009).

    **B.**    ***Pro Se* Plaintiffs**

Complaints made by *pro se* plaintiffs are to be examined with "special solicitude," interpreted "to raise the strongest arguments that they suggest," *Shibeshi v. City of N.Y.*, 475 F. App'x 807, 808 (2d Cir. 2012) (summary order) (cleaned up), and "held to less stringent standards than formal pleadings drafted by lawyers," *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*) (cleaned up). Nevertheless, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and district courts "cannot invent factual allegations" that the plaintiff has not pleaded. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (cleaned up).

### III.     DISCUSSION

####    A.     Timeliness

Defendants argue that Plaintiff's § 1983 claims should be dismissed because they are untimely.  (Ds' Mem. at 4-6.)  The statute of limitations for a § 1983 action in New York is three years.  *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013); *Lynch v. Suffolk Cnty. Police Dep't, Inc.*, 348 F. App'x 672, 674 (2d Cir. 2009) (summary order).  Under federal law, a claim arising under § 1983 "accrues," meaning the statute of limitations starts to run, when the plaintiff "knows or has reason to know of the injury which is the basis of his action."  *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002) (cleaned up); *see Pinaud v. County of Suffolk*, 52 F.3d 1139, 1157 (2d Cir. 1995) ("[W]hen a plaintiff knows or ought to know of a wrong, the statute of limitations on that claim starts to run . . . .").

Here, Plaintiff alleges several constitutional violations, all of which occurred more than three years before Plaintiff brought this action in October 2019:  (1) on September 16, 2014, Stuetzle and Aquafredda assaulted and injured Plaintiff in retaliation for grievances Plaintiff had filed against various corrections officers, (SAC ¶¶ 1, 16-18); (2) thereafter Dragoon, Cocuzza, and Long-Kutoy threatened Plaintiff or suggested he would face retribution if he filled out an ambulatory report indicating that he was assaulted, (*see* SAC ¶¶ 32, 39, 42, 49); (3) Burnett and Koenigsmann were "well aware" that their respective subordinates acted unlawfully but failed to supervise them properly and failed to protect Plaintiff, (SAC ¶¶ 61-62); and (4) on September 17, 2014 and into 2015, Plaintiff was denied proper medical treatment for injuries he sustained from the assault, (*id.* ¶¶ 22, 53-57).[5]  Because the case was not filed until October 25, 2019, all the

---

[5] Plaintiff argues that "prison staff, defendants and attorney general continued to deny medical treatment and retaliation for years to come."  (P's Opp. at 13.)  I read this comment to

9

claims set forth above are thus time-barred under the statute of limitations by close to or more than two years.

Plaintiff does not dispute that he filed the case more than three years after the relevant events, but rather invokes the doctrine of equitable tolling, which "allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances." *Goodman v. Port Auth. of N.Y. and N.J.*, 850 F. Supp. 2d 363, 381 (S.D.N.Y. 2012) (cleaned up).  Equitable tolling is applied, however, only in those "rare and exceptional circumstances[] where a party was prevented from timely performing a required act and where that party acted with reasonable diligence throughout the period he sought to toll,'" *Jones v. City of New York*, 846 F. App'x 22, 24 (2d Cir. 2021) (summary order) (cleaned up), and "[t]he threshold necessary to trigger [it] is very high, lest the exceptions swallow the rule," *Lombardo v. United States*, 860 F.3d 547, 551 (7th Cir. 2017) (cleaned up).  It follows that "a litigant seeking equitable tolling bears the burden of establishing two elements:  (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).

> The word "prevent" requires the petitioner to demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances.

---

mean that defendants and their counsel continue to deny that there was retaliation or denial of medical treatment.  I do so in part because the comment refers to the lawyers representing Defendants in this case, in part because Plaintiff does not provide facts describing any lack of treatment extending years beyond the incident, and in part because by Plaintiff's own account he got intensive medical care beginning in 2014, including surgery in 2015 and three years of physical therapy.

10

*Valverde v. Stinson,* 224 F.3d 129, 134 (2d Cir. 2000). Thus, "the link of causation between the extraordinary circumstances and the failure to file is broken" if the party seeking equitable tolling has not exercised reasonable diligence in pursuing his rights. *Hizbullahankhamon v. Walker*, 255 F.3d 65, 75 (2d Cir. 2001) (cleaned up); *see Sanchez v. United States*, No. 21-CV-1147, 2021 WL 2481836, at *2 (S.D.N.Y. June 17, 2021); *Hines v. United States*, No. 20-CV-10064, 2021 WL 2456679, at *2 (S.D.N.Y. June 16, 2021).

Plaintiff is not entitled to the equitable tolling doctrine because no "extraordinary circumstance stood in his way." *Watson v. United States*, 865 F.3d 123, 132 (2d Cir. 2017). Such a standard refers to "the severity of the obstacle impeding compliance with a limitations period." *Id.* (cleaned up). Consequently, "it is not enough for a party to show that he *experienced* extraordinary circumstances," but he must also "demonstrate that those circumstances *caused* him to miss the original filing deadline." *Id.* (emphasis in original) (cleaned up). The Second Circuit has "set a high bar to deem circumstances sufficiently 'extraordinary' to warrant equitable tolling." *Dillon v. Conway*, 642 F.3d 358, 363 (2d Cir. 2011) (*per curiam*).

Here, Plaintiff asks this Court to consider his "handicaps and condition," (P's Opp. at 2-3), and offers several reasons for filing this action late: (1) on May 5, 2015,[6] Plaintiff had arthroscopic surgery for a shoulder injury he sustained from the assault and was in a significant amount of pain and could not raise his left arm above his shoulder; (2) he was in physical therapy for over three years and had twenty medical appointments between October 8, 2014 and October 26, 2016; (3) he was denied access to the law library on several dates between May 2016 and August 2019; (4) corrections officers not named as defendants in this action allegedly

---

[6] *See supra* note 4.

confiscated and destroyed his legal papers in June 2017; (5) he went on hunger strikes between June 2017 and August 2017 and again in September 2018 and suffered medical issues arising from those hunger strikes; (6) he lacked or was denied writing materials at one time in 2016, again for approximately one week in 2017, and then again after his hunger strike in 2018; and (7) his eyeglasses were confiscated, and he did not receive new eyeglasses until April 17, 2019,[7] (*id.* at 3-8, 17-18).

Plaintiff has not presented "exceptional circumstances" warranting equitable tolling. Several of these incidents – the surgery and medical appointments – lasted only one day. Plaintiff fails to specifically explain how his medical appointments and physical therapy prevented him from complying with the statute of limitations in this case. Similarly, Plaintiff does not state with any specificity how long he was allegedly denied use of the law library, and in any event, "restricted access to library facilities does not merit equitable tolling," *Cross v. McGinnis*, No. 05-CV-504, 2006 WL 1788955, at *6 (S.D.N.Y. June 28, 2006), nor does "limited access to legal assistance," *Francis v. Miller*, 198 F. Supp. 2d 232, 235 (E.D.N.Y. 2002). And temporary lack of writing materials for a few months would not prevent filing within three years. Nor, needless to say, would a voluntary action like a hunger strike – which by Plaintiff's account only lasted sixty days, (P's Opp. at 5) – excuse Plaintiff from complying with the statute of limitations. Plaintiff's arguments fail to link these circumstances to his inability to timely file this action and thus fails to explain how any circumstance "beyond his control . . . prevented him from filing this Section 1983 action within the limitations period."

---

[7] Plaintiff does not indicate the date his eyeglasses were confiscated. He does, however, state that it occurred during the period of hunger strikes in 2017. (P's Opp. at 17-18.)

*Urena v. Annucci*, No. 16-CV-9708, 2018 WL 3863454, at *4 (S.D.N.Y. Aug. 14, 2018) (cleaned up); *see Hines*, 2021 WL 2456679, at *3.[8]

Indeed, Plaintiff's papers reveal that in addition to the grievance he filed in March 2015 relating to the incident at issue in this case, (SAC at 21, 37, 49, 55; AC at 14, 28, 39, 44), he filed a number of other grievances throughout this time period, (*see* Aff. at 1; P's Opp. at 4-5). Specifically, it appears he filed two grievances in 2015, four in 2016 and three in 2017. (*See* Aff. at 1, 5; P's Opp. at 4-5.) If he was able to do so despite the obstacles he claims, there is no apparent reason why he could not have timely filed this lawsuit by September 14, 2017.

Nor does the continuing violation doctrine save Plaintiff's claims. That doctrine does not apply to "discrete unlawful acts, even where those discrete acts are part of a serial violation, but to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment." *Lefebvre v. Morgan*, No. 14-CV-5322, 2016 WL 1274584, at *18 (S.D.N.Y. Mar. 31, 2016). It "can apply when a prisoner challenges a series of acts that together comprise an Eighth Amendment claim of deliberate indifference to serious medical needs." *Shomo v. City of New York*, 579 F.3d 176, 182 (2d Cir. 2009). "That the continuing violation doctrine *can* apply, however, does not mean it must." *Id.* (emphasis in original). Thus, "[t]o assert a continuing violation for statute of limitations purposes, the plaintiff must allege both the

---

[8] While the absence of eyeglasses between summer 2017 and April 2019 could justify equitable tolling for that period if it in fact prevented Plaintiff from seeing well enough to write or type a complaint, there is no indication that that is the case here. Plaintiff claims to have experienced blurry or double vision while he was without his glasses, (P's Opp. at 17), but he does not claim that these conditions were constant or that they were so severe that he could not write. Indeed, the only evidence is to the contrary. Attached to Plaintiff's opposition is a grievance form he filled out by hand, dated November 13, 2017, complaining about the confiscation of, and failure to return, his glasses. (*Id.* at 19.) As he was able to complete that form clearly and legibly without his glasses, there is no reason he could not have timely filed his complaint without them. Further, he was without his glasses only for the last few months of the three-year period. Had he been diligent, he could have filed his complaint well before then.

existence of an ongoing policy of deliberate indifference to his or her serious medical needs and some non-time-barred acts taken in the furtherance of that policy." *Id.* (cleaned up). "As a general rule, courts in the Second Circuit view continuing violation arguments with disfavor," and do not apply it unless there are "compelling circumstances." *Plumey v. New York*, 389 F. Supp. 2d 491, 498 (S.D.N.Y. 2005) (cleaned up).

The only facts Plaintiff provides describe alleged lack of care in 2014 and 2015 based on denial of treatment, misdiagnosis, and denial of sick call. Putting aside whether these are discrete acts and assuming they amount to a policy, Plaintiff identifies no non-time-barred act that occurred within the three years before he filed this lawsuit. *See Jennings v. Municipality of Suffolk Cnty.*, No. 11-CV-911, 2013 WL 587892, at *7 (E.D.N.Y. Feb. 13, 2013); *see also Mitchell v. Goord*, No. 06-CV-6197, 2011 WL 4747878, at *5 (W.D.N.Y. Aug. 24, 2011) (plaintiff must specify a timely act by named defendant to invoke continuing violation doctrine), *report and recommendation adopted*, 2011 WL 4753456 (W.D.N.Y. Oct. 5, 2011). Therefore, the continuing violation doctrine does not apply.

For the reasons stated above, Plaintiff's § 1983 claims are time-barred.[9]

**B.** **Leave to Amend**

Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (cleaned up). "Leave to amend, though liberally granted, may properly be denied" for "'repeated failure to cure deficiencies by amendments previously allowed'" or "'futility of amendment,'" among other reasons. *Ruotolo v.*

---

[9] Because I dismiss on statute of limitations grounds, I need not address Defendants' arguments on the merits.

*City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has already amended his complaint twice.  (*See* Docs. 11, 25.)  In general, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend.  *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first.  Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories *seriatim*.") (cleaned up); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (*per curiam*) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.") (cleaned up).

Further, Plaintiff has not asked to amend again or otherwise suggested that he is in possession of facts that would cure the deficiencies identified in this opinion.  Indeed, "[t]he problem[s] with [Plaintiff's] causes of action [are] substantive," and "better pleading will not cure [them]."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).  Accordingly, the Court declines to grant leave to amend *sua sponte*.  *See TechnoMarine SA v. Giftports, Inc*., 758 F.3d

15

493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if plaintiff fails to specify how amendment would cure the pleading deficiencies in the complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249-50 (2d Cir. 2004) (*per curiam*) (district court did not abuse its discretion by not granting leave to amend where there was no indication as to what might have been added to make the complaint viable and plaintiffs did not request leave to amend).

### IV.     CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. The Clerk of the Court is respectfully directed to terminate the pending motion, (Doc. 32), and close the case.

**SO ORDERED.**

Dated: July 21, 2021
       White Plains, New York

                                                                 */s/ Cathy Seibel*
                                                        CATHY SEIBEL, U.S.D.J.